**Mel KLEIN, et al., Plaintiffs,**

v.

**Laura KING, et al., Defendants.**

**No. C 88 3141 FMS (WDB).**

United States District Court,
N.D. California.

Sept. 14, 1990.

William S. Lerach, Blake M. Harper, Eric Isaacson, Milberg, Weiss, Bershad, Specthrie & Lerach, Edward M. Gergosian, Thomas M. Wilson, Barrack, Rodos & Bacine, San Diego, Cal., Joseph D. Ament, Michael J. Freed, Much, Shelist, Freed, Dennenberg, Ament & Eiger, P.C., Chicago, Ill., Robert N. Kaplan, Jonathan K. Levine, Kaplan & Kilsheimer, New York City, Don R. Lolli, Beckett & Steinkamp, Kansas City, Mo., for plaintiffs.

Melvin R. Goldman, John D. Danforth, Carla B. Oakley, Morrison & Forester, San Francisco, Cal., Steven M. Schatz, Terry T. Johnson, Laurie B. Smilan, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., John W. Fowler, James P. Kleinberg, Anne O. Hanna, McCutchen, Doyle, Brown & Enerson, San Jose, Cal., for defendants.

### ORDER RE DISCOVERY

WAYNE D. BRAZIL, United States Magistrate.

On September 12, 1990 the Court held a hearing on the parties positions with respect to provisions in a proposed protective order and conducted a discovery planning conference. After considering the parties' substantial written and oral submissions on all issues, the court hereby enters the following ORDERS:

### PROVISIONS IN THE PROTECTIVE ORDER

1. *Burden of persuasion/showing good cause re materials designated confidential.*

■ A party who seeks to protect the confidentiality of a document or other communication bears the burden of justifying the protection. The protective order entered in this matter shall permit a party to designate documents as "confidential" (based on trade secrets) without making any threshold showing, but if another party challenges that designation, the party seeking the protection must show that the document (or other communication) contains a trade secret and that, after a complete balancing of competing interests, treating the document as "confidential" (under the terms of the protective order) is justified.

■ The fact that a party fails to challenge another party's designation of a document as confidential within 30 days of learning about the designation shall not, by itself, constitute a waiver of the right to raise such a challenge at a subsequent time. Delay in raising such a challenge, however, will adversely affect the case development process and the interests of other parties, and shall be considered, in the balancing, against the party who belatedly raises the issue.

2. *Restrictions on use in other litigation of documents/information designated confidential or highly confidential in this lawsuit.*

The following sentences shall be added to paragraph 2 of the Order:

Any party or non-party may make a motion to the Court for permission to use documents or other information/communications that have been designated in this lawsuit as confidential or highly confidential in litigation other than the case at bar, and the Court shall not unreasonably withhold such permission. However, the Court's permission shall not be necessary for counsel to use information (not documents or other communications themselves) learned from matter designated as confidential or highly confidential in this lawsuit to help formulate discovery requests in other litigation; the purpose of this exception is to permit

counsel to use things learned in this case to frame intelligent requests for information in other cases, but in so doing counsel shall take special care not to disclose, directly or indirectly, the content of any trade secret information learned in this case from another party.

### 3. Designations by Informix of additional competitors.

■ In paragraph B.3. of Section 3 of the protective order, all matter after the first full sentence shall be stricken. At some point in the future, if Informix believes that an additional company should be added to its list of major competitors and that any expert retained or consulted by plaintiffs should be disqualified if he or she has, or plans to have, an employment or consulting relationship with that competitor, Informix may bring a motion seeking such relief.

During the hearing on these matters Informix indicated that one of the companies (Ingres) already on the list in paragraph B.3. very recently has been or is about to be acquired by another company, thus rendering that acquiring company a "major competitor" within the meaning of that phrase in this paragraph. The Court hereby permits Informix, without additional application or motion, to add at this time the name of that acquiring company to the list in paragraph B.3.

### DISCOVERY PLANNING ORDER

### 1. Class certification.

■ A. Defendants shall have no more than 90 calendar days from the date this Order is filed to complete all discovery related to class certification issues and to file and serve any objections/challenges/opposition to plaintiffs' motion for class certification. Because, with one limited exception noted below, it is not clear what the principled basis might be for resisting the class certification motion, the Court expects defendants to consider in good faith the possibility of not formally opposing the motion. If defendants elect not to oppose the motion, they shall so notify plaintiffs' counsel and the Court

within the 90 day period alluded to above. Of course, if defendants conclude that there is in fact a principled basis for resisting the motion, they may file opposing papers. Plaintiffs shall have 30 days to file their reply to defendant's opposition to the class certification motion.

■ B. During the discovery planning conference counsel for Hambrecht & Quist asserted that neither of the named plaintiffs owned shares in Informix prior to or on the date of the merger with Innovative and that that fact might disqualify them from serving as representatives of members of the class who did own stock in Informix at that time and who arguably have standing to press a claim under Section 11 of the Securities Act and to complain about the fairness opinion that H & Q formulated in connection with that merger. This matter may fairly be the subject of opposition to aspects of the class certification motion.

C. Plaintiffs and their counsel are ordered to respond promptly to the document production requests and interrogatories that defendants have served with respect to the class certification issues.

D. Without a stipulation from plaintiffs' counsel or an order from this court, defendants may take no more than three depositions, each of no longer than one day, as part of the discovery they conduct with respect to the class certification issues. The rules articulated below that will be applicable to all depositions taken in this case shall apply to any depositions taken pursuant to this paragraph.

E. Without a stipulation from plaintiffs' counsel or an order from this court, defendants may serve no additional interrogatories or document requests with respect to the class certification issues.

### 2. Insurance.

Within 30 calendar days of the filing of this Order defendants shall disclose to plaintiffs' counsel, subject to a "lawyers' eyes only" protective Order that is hereby entered, all insurance policies that arguably offer coverage that might be implicat-

ed by any of the matters alleged in the First Amended Complaint.

### 3. *Document discovery from non-parties that plaintiffs had initiated prior to Judge Smith's stay.*

Plaintiffs shall press forward to complete expeditiously their previously initiated efforts to discover documents from the following non-parties: Shearson, Ernst & Young, Arthur Andersen, Ware & Freidenrich, Stinson Mag, and the SEC. Plaintiffs shall serve on counsel for these non-parties a copy of this Order. Within *30 days* of the filing of this Order, counsel for plaintiffs shall report to this Court (by letter, copying counsel for all other parties) on the status of this document discovery. Unless otherwise ordered, plaintiffs shall have completed any meet and confer negotiations arising out of these document requests within *60 days* of the filing of this Order, and shall have filed any necessary motions to compel with respect to these discovery efforts no later than *75 days* after the filing of this Order.

The discovery adverted to in the preceding paragraph covers acquisition only of documents, not of testimony (from a Rule 30(b)(6) witness or otherwise) or other evidence necessary for authentication or other foundational matters. The Court expects all counsel to work cooperatively to resolve authentication/foundational matters without resort to formal discovery or motions. Any party who unjustifiably forces another party to incur needless expense in order to resolve authentication/foundational matters shall be sanctioned in amounts that are large enough both to eliminate adverse cost/fee impacts on the party forced to engage in the needless work and to deter conduct of a similar character in the future.

### 4. *Staged discovery with respect to the core aspects of the case.*

The Court has considered carefully defendants' creative suggestions about staging discovery by time periods and about using 90 day interval iterations of issues to focus, discipline and limit the dis-

covery process. We have concluded not to endorse either of these proposals as made, in part because we have formulated an alternative plan that we hope will deliver more to all the interests involved here. We decline to adopt the staging by time periods approach because we feel that there is considerable overlap in evidence, and sources of evidence, relating to the periods suggested, and because it is arguable that the center of the case rests in the second period, a period which the parties would not aggressively explore, under defendants' plan, for many months. We do not want to put exploration of the center of this case on hold. Instead, we want the parties to go to the center first and try to settle this case before they spend unjustifiable amounts of their clients' resources dotting every discovery "i" and crossing every discovery "t". The "issue iteration" proposal also carries several risks. It would require investment of considerable lawyering resources that might well be better spent finding out what the essential underlying facts are. While there is a lot of fancy verbiage about a case like this, in essence it is about facts: what was the state of the company at various points, and who knew or should have known what about that state. We want the parties to focus on these major factual matters, because once they are explicated good lawyers ought to have a pretty good idea about where the case is going to end up. The issue iteration proposal also would create a considerable risk of friction between lawyers and lots of unproductive and perhaps inconclusive satellite litigation.

We also have considered the arguably distinctive position of Hambrecht & Quist in this litigation, and its implications for an orderly, fair configuration of the pretrial process. We believe that the case development plan that we describe below represents the most sensible and fairest accommodation of the competing interests here. We have no desire to force H & Q to incur substantial, unjustifiable expenses. We believe that our plan permits H & Q to press its effort to escape the case in about as cost-effective a manner as the alternatives proposed by defendants while not permit-

ting H & Q's pursuit of an early exit to unjustifiably dislocate and delay the discovery and case development processes that make most sense for the other litigants.

### A. A general outline of the Court's discovery plan.

■ The plan the Court hereby imposes contemplates dividing discovery into two or three stages (the parties, at a juncture to be described, will have a great deal to say about whether there are two or three stages). The purpose of the first stage will be to get as efficiently on the table as possible the core information that the parties need in order to value the case sensibly for settlement purposes. In this stage we will focus primarily on documents, and on those documents that shed the most light on the most important facts. After core document production, and a limited number of depositions, the parties will participate in Court-ordered settlement negotiations, hosted by a special master or team of special masters of their choosing (assuming they can agree on nominees in whom the Court has confidence). The Court expects the parties to make a very hard run at settlement at this juncture. If that hard run fails, they will have two options. The first option would be to conduct limited additional discovery, for about two months, for the purpose of explicating matters that surfaced as obstacles to settlement in the negotiations held at the end of the first stage. That discovery would make up stage two of the pretrial process. It would be followed by another, final round of settlement negotiations, again hosted by the special master(s). If settlement could not be achieved, the parties would move into stage three of the pretrial period, during which they would be permitted to complete the document, deposition, and other discovery necessary to prepare the case for trial. If the parties, with inputs from the special master, conclude after the settlement negotiations at the end of stage one that there is no point in returning after two months or so of additional discovery for further settlement negotiations, they would skip what we are labelling stage two and

move directly into the broader additional discovery necessary to dispose of the case by trial (what we are calling the final discovery stage).

If the parties elect to pursue focused discovery for a couple of months after completing the first stage and before giving up on the settlement process (at least until the trial looms more real), the court will permit the parties to decide what discovery to do during this interim period. If counsel cannot agree what discovery to conduct during this limited period, the Court will resolve their differences.

For the discovery in the final period, the Court will require submission of detailed discovery plans and will enter another discovery planning order.

Under this plan, no party will be permitted to file a motion for summary judgment or any motion under Rule 12 or Rule 16 until the completion of stage one discovery. This restriction is imposed for several reasons. First, we want all counsel to focus in this first period on learning the facts necessary to understand the center of the case and to value it for settlement. We do not want resources devoted during this early stage to motions that are unlikely to completely derail or substantially re-configure this case. Moreover, we believe that the discovery we contemplate for stage one would have to be done in any event before the Court is likely to be in a position to rule on a motion that would change the basic shape of this litigation. While we expect Hambrecht & Quist to disagree with this view, we feel that, given the timeframe we will impose below for completion of stage one, and the focus we will give it, that this plan will not force Hambrecht & Quist to remain in the case significantly longer than it otherwise might or to undergo substantial expenses that it otherwise might avoid. Hambrecht will want to review much of the material that will be the subject of discovery in stage one in any event. It can ignore categories of documents or depositions it feels are irrelevant to its position in this matter. It will be free to file its motion for summary judgment right after the settlement negotiations are completed

at the end of stage one (if it has not settled). If Hambrecht filed its motion now, before stage one discovery were completed, plaintiffs might well be able to persuade the Court that, prior to responding to that motion, they should have an opportunity to explore most of the documents we contemplate being discovered in stage one.

### B. Stage One.

#### (1) *Documents.*

In this stage the discovery will focus almost exclusively on documents. Counsel for all parties shall work together to identify the documents (wherever located) that are most likely to shed light on the *facts* on which disposition of this litigation will turn. In particular, counsel are ordered to focus their initial document examinations and productions on the papers that show, at various junctures, how Informix and, to a lesser extent, Innovative, were in fact doing: e.g., in the pre-merger period, what was the financial health of Informix and Innovative and at what stages of development were new products; in the post-merger period, how were the marketing/sales machineries of Informix and Innovative coordinated, what was the financial health of the company at various junctures, what was the product development history of the key new products, what significant problems, if any, was the company having with older products and with maintaining market share.

There is no justification for forcing opposing counsel to use interrogatories to acquire basic information about the nature, organization, and location of discoverable documents; counsel shall work together to identify, at least by category, the documents most likely to provide reliable information about the factual matters that are at the center of this action. Thereafter, defendants shall begin producing these documents. They may be produced either as they are maintained in the normal course of business or in categories jointly worked out by counsel. *The initial productions by defendants shall be made no later than 60 days after the filing of this order.* The court does not expect these initial pro-

ductions to be exhaustive, even as to "essential" or core documents. But the court does expect a substantial production. After this initial substantial production, defendants shall make additional productions, on a schedule whose specifics the court leaves to counsel to work out, of the remainder of the core documents, i.e., documents needed to sensibly value the case for settlement purposes. *The production of the stage one documents shall be complete by March 1, 1991.*

Because the productions ordered here will be made on something of a fast track, the court hereby Orders that inadvertent disclosure of documents protected by attorney-client privilege or the work product doctrine shall not be deemed a waiver of the right to invoke protection for either the documents inadvertently disclosed or other communications in the same subject area as long as counsel for the party who made the inadvertent disclosure is not dilatory thereafter in bringing the matter to the attention of other counsel.

Counsel are reminded that the court does *not* expect the stage one document production to be exhaustive. Additional opportunities to complete production of documents that are clearly less central to assessing the case for settlement purposes but that are necessary for trial will be afforded in stages two or three.

#### (2) *Interrogatories.*

During stage one, interrogatories may be used for only one purpose: to ascertain the "identity" of persons with knowledge of relevant matter. During this stage no party may serve more than 35 interrogatories (as defined in Local Rule 230–1). Because counsel are ordered to work cooperatively to fashion appropriate document production requests, there is no need to use interrogatories to learn the nature, organization or location of documents.

*Any interrogatories used during stage one shall be served no later than January 15, 1991, and shall be answered fully within 30 days.* The Court has selected these dates to give counsel an opportunity to use information learned in the first core document productions to frame interroga-

tories seeking the identity of individuals with knowledge of important matters disclosed in those documents. Counsel may want to depose some such people toward the end of stage one. See paragraph (3), below.

### (3) *Depositions.*

Unless the parties otherwise stipulate, plaintiffs will be permitted to take no more than 12 and defendants no more than 6 depositions during stage one. Absent stipulations to the contrary, none of these depositions may consume more than two days.

Because the purpose of discovery in this first stage is not to probe exhaustively every dimension of each area of knowledge that each deponent might have, but to get to the center of things efficiently, the Court does not expect counsel to "complete" each deposition noticed in this stage. Thus, if the parties fail to settle the case, or to dispose of it by motion, the Court will entertain requests by counsel to re-convene in the final stage of discovery some depositions that were taken in stage one. In any deposition that is re-convened, however, the Court will limit questioning to matters not covered in the first deposition.

During depositions, counsel may instruct a witness not to answer *only* on grounds of privilege or work product (we assume that the protective order virtually eliminates any good faith basis for an instruction not to answer based on fear of disclosure of a trade secret). If a question calls for disclosure of matter protected by a right of privacy, the attorney for the deponent may designate the question and answer for protection (sealing).

Counsel may not include in objections to deposition questions, in the presence of the deponent, a statement that identifies a factual assumption in the question that allegedly is misplaced or that attempts to correct such a factual assumption.

The Court will entertain no requests for intervention during depositions. Instead, the Court will rely on two forces to discourage abuses of the deposition process: fear of retaliation by opposing counsel and of severe sanctions by the court. Any party who feels, after a deposition, that a lawyer has abused the process may file a motion for sanctions, indicating with particularity those portions of the transcript that reflect the alleged abuses. If the Court concurs, after hearing on the motion, that the process has been abused, it will award sanctions that fully compensate the abused party and that deter further misconduct.

*Counsel shall complete the taking of the depositions permitted here (stage one) by no later than May 1, 1991.*

### (4) *Contact with former employees.*

The Court declines to order plaintiffs counsel to give defense counsel for the corporate defendants advance notice of any interviews that plaintiffs' counsel or their investigators might conduct of any former employees of any defendant.

### (5) *Requests for Admission.*

No party may serve requests for admission during stage one.

### (6) *Damages.*

By *October 15, 1990,* the parties shall submit jointly a statement regarding whether and, if appropriate, how damages issues should be explicated during stage one. The Court will consider permitting additional discovery on these issues if the parties feel that it would be substantially helpful in preparing for the settlement negotiations that will follow stage one. The parties are encouraged to be imaginative with respect to this task; e.g., they might suggest deposing two damages experts near the end of this stage, preserving the right to re-depose them (or to use other damages experts) closer to trial and building in some protections against subsequent tactical misuse of opinions such experts might offer at this juncture, where not all of the data on which they would be expected to rely in forming a final opinion would be available.

### (7) *Settlement negotiations at the close of stage one.*

*During May, 1991,* the parties shall engage in intensive, good faith settlement negotiations.

Subject to the Court's ultimate approval, they shall be permitted to select the special

master or team of special masters who will host their negotiations. *By January 15, 1991*, counsel shall jointly present to the Court the names (accompanied by resumes or other statements of qualifications) of the person or persons they would like to serve in this role. Counsel are free to select persons from outside this jurisdiction. If the parties cannot agree on a nominee or nominees, each party or side shall submit the name of one person (not connected in any way with this litigation or any of the firms working in this litigation) who will work with the Court in selecting the settlement host or hosts.

The fees of the special master(s), at reasonable hourly rates, shall be paid by the parties, divided evenly between plaintiffs and defendants.

The settlement negotiations ordered here shall be completed by *no later than June 1, 1991*, at which time, if the case has not been settled, the litigation will move into the next stage of pretrial development.

C. Stage Two Discovery. (Optional)

(1) As noted above, if the parties fail to reach a settlement during the negotiations at the close of stage one but feel that some limited, well-focused additional discovery (or other process of generating information) might improve appreciably the odds of reaching agreement, the Court will permit counsel to submit plans for developing or sharing the necessary information over a limited period, e.g., two months, to be followed promptly by a second intensive round of settlement negotiations. It is possible that during the first round of settlement negotiations counsel will identify a few key areas of disagreement or ignorance that seem to be serving as real impediments to one or more of the parties making the final settlement-valuation decisions that must be made to determine whether settlement is possible. If such "informational" obstacles to settlement exist (as opposed to differences of opinion about inferences a trier of fact will draw from evidence that is already on the table or about the legal implications of such evidence), it might well make sense to attack those obstacles through focused discovery, investigations, or information exchanges, then return to the bargaining table with the "informational" excuses removed.

(2) If counsel elect to pursue this optional, short-term stage two discovery, they must submit jointly, within ten days after the close of the settlement negotiations at the end of stage one, their plan for conducting that discovery or otherwise acquiring a sharing the information needed to support the final settlement negotiations.

(3) At the close of this second stage, the parties again shall engage in intensive settlement negotiations. They may elect to have these negotiations hosted in whole or in part by the same persons who served as special master hosts of the negotiations at the close of stage one, and/or they may, by stipulation, bring in another settlement facilitator, either to supplement or replace the services of the person(s) who hosted the earlier negotiations. Counsel are encouraged to consider adding a new neutral voice to this process if a fresh or additional perspective might appreciably improve prospects for settlement.

D. Motions.

Any party may file motions directed to the merits of the case, e.g., a motion for summary judgment or partial summary adjudication, at any time after the completion of stage one discovery, i.e., *any time after May 1, 1991*. Of course, the district judge may decide to postpone the deadline for the filing of papers responsive to any such motions in order to avoid interference with completion of the discovery described above so that settlement can be fully explored.

E. Final Stage Discovery.

If neither settlement negotiations nor motions have resolved this case after the close of the first and second stages of discovery, the parties shall submit proposed plans for completing the discovery that is necessary to prepare for trial. The plans submitted for final stage discovery shall describe the discovery already completed, identify with particularity the dis-

covery that still needs to be done, justify that discovery and the methods to be employed to conduct it, suggest and defend discovery limitations, and set forth proposed timetables. Counsel shall include in these plans special sections covering discovery from experts. Absent a compelling showing, the Court will order that discovery from experts be taken by oral deposition after disclosure of any reports or other writings generated by the expert and of all documents and other matter which the expert considered in connection with this case. Interrogatories of the kind contemplated in Federal Rule of Civil Procedure 26(b)(4) shall not be used.

*The parties shall submit these plans either by June 17, 1991 (if the parties decide not to engage in second state discovery for purposes of follow-up settlement efforts) or by September 10, 1991 (if follow-up discovery and settlement are pursued).*

### DISCOVERY STATUS REPORTS

In addition to the duties imposed above, the parties shall submit jointly to the undersigned written reports describing their progress in complying with this order on *December 15, 1990,* and on *February 1, 1991.* If these reports or any other developments suggest the need, the Court will schedule conferences, with all counsel participating.

### KEEPING CLIENTS INFORMED

By *September 21, 1990,* all counsel shall deliver a copy of this order to their clients. By *October 12, 1990,* each attorney shall have discussed this plan and its objectives in detail with his or her client. In these discussions counsel shall describe the court's concern that far too often in these kinds of lawsuits settlement is achieved only at the eleventh hour, after huge amounts of money have been spent on lawyers fees that are generated in only marginally productive, or completely unproductive, discovery and motion work. There seems to be a ritualistic cast to the play of these suits. The purpose of the discovery plan imposed here is to equip counsel and

litigants of good faith to cut through that ritual and sensibly dispose of this matter at considerable savings in cost and time. These comments are not made to suggest that the court has any view on the merits of this action, or that any particular terms of settlement might be appropriate. The case may be worth nothing or a great deal. The court's goals, simply, are to assure active client involvement in decision-making and to try to prevent inertia or other irrational forces from disabling the parties from getting quickly to the center of their dispute and exploring seriously the most sensible ways to resolve it.

IT IS SO ORDERED.